# Exhibit 5

May 26, 2020 email from Gregory
Suellentrop to Curtis Flood attaching
W&T's changes to NDA

| | |
|---|---|
| **From:** | Suellentrop, Gregory |
| **To:** | Flood, Curtis |
| **Cc:** | Smith, Parker |
| **Subject:** | Fwd: [EXTERNAL]RE: [EXTERNAL] Re: [EXTERNAL]Quick Call |
| **Date:** | Tuesday, May 26, 2020 9:51:51 PM |
| **Attachments:** | 2744_001.pdf |
| | ATT00001.htm |
| | 3 AE NDA WT (200526 redline).docx |
| | ATT00002.htm |

**Greg Suellentrop**
**Evercore** | **O** 713.427.5767 | **M** 832.206.3880 | Gregory.Suellentrop@evercore.com

Begin forwarded message:

> **From:** Steve Schroeder <sschro@wtoffshore.com>
> **Date:** May 26, 2020 at 5:07:51 PM CDT
> **To:** "Suellentrop, Gregory" <Gregory.Suellentrop@Evercore.com>
> **Cc:** "Smith, Parker" <Parker.Smith@Evercore.com>
> **Subject: RE:  [EXTERNAL]RE: [EXTERNAL] Re: [EXTERNAL]Quick Call**
>
>
> We have discussed internally and attached is an executed version of a NDA that is
> acceptable to W&T.  I have also included a redline version to aid in the review of our
> changes.
>
> *Steve Schroeder*
> Senior Vice President and Chief Technical Officer
>
> +1 713 624 7258 (direct)
> +1 281 755 4078 (mobile)
> +1 713 626 8527 (fax)
> sschro@wtoffshore.com
> **W&T Offshore, Inc.**
> Nine Greenway Plaza, Suite 300
> Houston, TX, US 77046-0908
> +1 (713) 626-8525 (main)
> www.wtoffshore.com
>
> 
>
> *A U.S. Company helping to safely supply energy for its Country*
> **From:** Suellentrop, Gregory [mailto:Gregory.Suellentrop@Evercore.com]
> **Sent:** Tuesday, May 26, 2020 1:08 PM
> **To:** Steve Schroeder
> **Cc:** Smith, Parker
> **Subject:** [EXTERNAL]RE: [EXTERNAL] Re: [EXTERNAL]Quick Call
>
> Steve,

I hope you had a good Memorial Day Weekend. We wanted to touch base regarding the NDA. Have you had a chance to catch up with Land and Legal regarding its status? Please advise when you have a chance.

Thanks,
Greg

**Greg Suellentrop**
Evercore | **O** 713.427.5767 | **M** 832.206.3880 | Gregory.Suellentrop@evercore.com

---

**From:** Suellentrop, Gregory
**Sent:** Friday, May 22, 2020 6:26 PM
**To:** 'Steve Schroeder'
**Cc:** Smith, Parker
**Subject:** RE: [EXTERNAL] Re: [EXTERNAL]Quick Call

Steve,

Any movement on the NDA today? We were hoping to get it reviewed before the holiday. Please advise when you have a chance and have a great weekend.

Best,
Greg

**Greg Suellentrop**
Evercore | **O** 713.427.5767 | **M** 832.206.3880 | Gregory.Suellentrop@evercore.com

---

**From:** Steve Schroeder [mailto:sschro@wtoffshore.com]
**Sent:** Friday, May 22, 2020 9:22 AM
**To:** Suellentrop, Gregory
**Subject:** [EXTERNAL] Re: [EXTERNAL]Quick Call

**CAUTION: This email originated from outside of Evercore. Do not click links or open attachments unless you recognize the sender and are expecting the attachment or link.**

Greg,

I followed up with Lien and the consents to allow the disclosure of confidential information was sent in error. At this time, Land and Legal are working the NDA. Hopefully common ground can be struck sooner than later.

Sent from my iPhone

On May 21, 2020, at 12:31 PM, Suellentrop, Gregory <Gregory.Suellentrop@evercore.com> wrote:

Steve,

Are you available for a quick call this afternoon?

**Greg Suellentrop**
**Evercore** | **O** 713.427.5767 | **M** 832.206.3880 | Gregory.Suellentrop@evercore.com

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, and destroy the original message.

The information contained in this email and any attachment, including the names and email address of any and all recipients, is subject to Evercore's GDPR Privacy Notice, the full context of which can be found [here](). Thank you

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, and destroy the original message.

The information contained in this email and any attachment, including the names and email address of any and all recipients, is subject to Evercore's GDPR Privacy Notice, the full context of which can be found [here](). Thank you

## CONFIDENTIALITY AGREEMENT

THIS CONFIDENTIALITY AGREEMENT ("**Agreement**") is entered into the 26TH day of _MAY_, 2020 by and between Arena Energy, LP, a Delaware limited partnership with offices located at 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380 on behalf of itself and its subsidiaries (collectively, the "**Discloser**"), and W&T Offshore, Inc., a legal entity formed under the laws of Texas with offices located at Nine Greenway Plaza, Suite 300, Houston, Texas 77046 ("**Recipient**").  Discloser and Recipient are sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**".

WHEREAS, Recipient has requested that it be permitted to examine certain information in the possession of and Discloser regarding the oil and gas properties, interests and assets owned by Discloser and more particularly depicted within the yellow blocks and as further identified and described on Exhibit "A" attached hereto and incorporated herein (the "Properties") for the sole purpose of determining whether or not to pursue the opportunity of entering into an agreement with Discloser for the purchase of the Properties (the "Transaction") and for negotiating any such agreement (the "Purpose"); and

WHEREAS, in order to enable Recipient to evaluate the Properties solely for the Purpose, Discloser has agreed to furnish Recipient with certain confidential and proprietary data and information pursuant to this Agreement which may include, but is not limited to, geological and geophysical information; well logs; engineering, drilling, and wellbore information and reports; cashflow forecasts; reserve studies; maps; field studies, financial and tax information and analyses; leases, licenses, concessions, permits, and contracts of all kinds; production, price, and reserves information; and agreements for production transportation, treating, processing, and marketing regarding the Properties (collectively, "**Materials**").

NOW, THEREFORE, in consideration of the disclosure and divulgence of the Materials to Recipient and of the covenants herein contained, Recipient and Discloser hereby agree as follows:

1.    Except as provided in Sections 2 and 3 below, Recipient and its Representatives (defined below) shall not, without the prior written consent of Discloser:

(a)  Use or allow the use of the Materials or any notes, copies, summaries, analyses, studies, forecasts, or other materials, information, or conclusions derived from the inspection, examination, or evaluation of the Materials, whether prepared by the Discloser or the Recipient or any of their respective Representatives or others which contain or reflect or are generated from, any of the Materials (collectively, "**Derivatives**") except for the Purpose;

(b)  Disclose or allow the disclosure to any person (defined below) of all or any portion of the Materials or Derivatives (collectively, "**Confidential Information**");

(c)  Disclose or allow the disclosure to any person of any correlation existing between the Confidential Information and public information; and

(d)  Disclose or allow the disclosure to any person the fact that the Confidential

Information has been made available to Recipient or that discussions or negotiations are taking place concerning the Properties, the Transaction or the Purpose or any of the terms, conditions, or other facts with respect thereto, including the status thereof; and

(e) Treat, and cause to be to treated, all Confidential Information as confidential.

As used herein, the term "**person**" shall be broadly interpreted to include the media, any individual, and any corporation, partnership, group, governmental unit or agency, or any other entity.

As used herein, the term "**Representatives**" shall mean, with respect to a Party, its Affiliates (defined below) and its and its Affiliate's officers, directors, employees, agents and advisors (including its and its Affiliates' financial advisors, attorneys, accountants and other consultants), and, to the extent permitted by <u>Section 7</u>, any actual or potential financing sources (debt, equity or otherwise) or co-bidders.

2.      Recipient may make the disclosures described in <u>Section 1</u> without Discloser's prior written consent:

(i) Subject to Section 5 and to the extent the Confidential Information must be disclosed under applicable law, governmental order, decree, regulation or rule, or stock exchange regulations; provided that Recipient or its Representatives, shall make all commercial reasonable efforts to give prompt notice to Discloser prior to such disclosure and shall limit the scope of such disclosure to the extent specifically required such law, governmental order, decree, regulation or rule, or stock exchange regulations.

(ii) To the following Recipient's Representatives who have a strict need to know for the Purpose:

    (a) Officers, directors, employees of Recipient;

    (b) Officers, directors and employees of its Affiliates ("Affiliates" means any company or legal entity that controls, or is controlled by, or that is controlled by an entity that controls, a Party. "Control" means the direct or indirect ownership of more than fifty (50) percent of the voting rights in a company or other legal entity or the contractual right to direct the management of such company or legal entity.); and

    (c) any professional consultant or agent retained by Recipient or its Affiliates for the purpose of evaluating the Confidential Information, including its and its Affiliates' financial advisors, attorneys, accountants and other consultants.

Prior to making any disclosures to any person under Section 2(ii)(a) or (b), Recipient shall advise the same of the restrictions of confidentiality imposed upon them as Representatives of Recipient in respect of the Confidential Information subject to this Agreement, and in respect of any person under Section 2.ii(c), Recipient shall obtain an undertaking of confidentiality from such persons substantially in the same terms and content of this Agreement; provided, however, that in the case of outside legal counsel, the Recipient shall only be required to procure that such legal counsel is

bound by an obligation of confidentiality. Recipient agrees to and shall be liable for any breach of this Agreement by any of its Representatives.

3.      The obligations in <u>Section 1</u> shall not apply to:

  (a)  Information which at the time of disclosure hereunder was previously developed by Recipient or its Representatives and already in their possession;

  (b)  Information which at the time of disclosure hereunder was in the public domain or which thereafter becomes part of the public domain through no action or failure to act on the part of Recipient or its Representatives; and

  (c)  Information which at the time of disclosure hereunder was or is thereafter lawfully acquired by Recipient or its Representatives from a source other than Discloser or its Representatives, provided that Recipient and its Representatives reasonably believe, after diligent inquiry, that such source was not under an obligation of confidence with respect thereto and did not acquire such information directly or indirectly from Discloser.

4.      Discloser retains all rights, titles, and interests in and to the Materials. At any time when requested in writing by Discloser, Recipient shall promptly, but in no more than five (5) business days, return to Discloser all Materials and destroy all Derivatives without retaining any copies thereof. Notwithstanding the above, Recipient may retain such electronic copies of the Confidential Information as are made by Recipient in the normal course of its routine electronic file back-up procedures provided that Recipient shall not access or use such Confidential Information and such files shall be destroyed in accordance with such procedures, but in no event later than six (6) months after Recipient's receipt of the written request described above. Upon Discloser's request, Recipient shall promptly provide written certification to Discloser that it has complied with the terms of this <u>Section 4</u>. Notwithstanding the return of the Materials or the destruction of the Derivatives, Recipient shall continue to be bound by its confidentiality and other obligations under the terms of this Agreement.

        However, notwithstanding anything contrary contained in this Agreement, it is recognized and agreed that (i) Recipient and its Representatives, Affiliates and its Representatives my retain mental impressions as a result of having reviewed the Confidential Information, and this Agreement shall not in any manner impede or restrict Recipient, its Representatives, its Affiliates or its Representatives from engaging in any aspect of the oil and gas business, or of any other business, outside of the Properties, and (ii) Recipient may already own or hereafter consider acquiring interests outside of the Properties and nothing contained in this Agreement shall in any manner impede or strict its right to do so.

5.      If Recipient or its Representatives are requested or required by oral question, written interrogatories, request for information or documents, subpoena, or similar process to disclose Confidential Information, Recipient shall make all reasonable efforts to promptly notify Discloser of such request, requirement, or proceeding in order to afford Discloser an opportunity to seek a protective order or other assurance that the Confidential Information will not be disclosed or disseminated by the recipient(s) thereof. Upon Discloser's request,

Recipient shall cooperate with Discloser to seek and obtain such a protective order or other assurance at the sole cost and expense of Discloser. If Discloser is unable to obtain or does not seek such a protective order or other assurance, then Recipient may disclose only such portions of the Confidential Information that Recipient or its Representatives are advised by their counsel they are legally compelled to disclose under pain or liability for contempt, censure, or penalty.

6.   This Agreement shall not be construed or implied to, and nothing herein shall, obligate Discloser to (i) furnish any specific information or type of information to Recipient or its Representatives or (ii) enter into any type of further agreement with Recipient. Discloser may reject any and all bids for the Properties at any time, may change the transaction procedures and may enter into any agreement with any other person, in each case at any time and without notice to the Recipient or any of its Representatives. There shall be no binding agreement between Discloser and Recipient for a Transaction unless and until a final definitive agreement for the Transaction has been fully signed and delivered by both Discloser and Recipient.

7.   Recipient represents that, other than as disclosed to Discloser in writing prior to the execution of this Agreement, neither Recipient nor any of its Representatives has entered into, directly or indirectly, any agreement or understanding with any person (other than any of Recipient's Representatives) with respect to a possible Transaction or that could otherwise affect such person's decisions or actions with respect to a possible transaction involving the Discloser.

8.   Without the prior written consent of the Discloser, neither Recipient nor any of its Representatives who are aware of the possible Transaction will initiate or cause to be initiated (other than through the specific contacts designated in writing by Discloser) any: (a) communication concerning the Confidential Information, the Transaction or the Discloser and its Affiliates; (b) requests for meetings with management in connection with a possible Transaction; or (c) communication relating to the business of Discloser or any of its Affiliates or a possible Transaction, in each case with any officer, director or employee of Discloser or any of its Affiliates. Additionally, Recipient will not communicate with any contractor, customer, supplier, or vendor of Discloser or any of its Affiliates regarding the Discloser or its Affiliates, including, without limitation, in connection with the possible Transaction (or Recipient's evaluation thereof) without the prior written consent of the Discloser. Despite anything in this Agreement to the contrary, and for the avoidance of doubt, Recipient is permitted to contact any creditor of Discloser or its Affiliates and discuss any aspect of the Confidential Information or Transaction with that creditor and acquire any portion of the Discloser's or its Affiliates outstanding debt.

9.   Discloser represents and warrants that it has the right and authority to disclose the Confidential Information to Recipient. RECIPIENT ACKNOWLEDGES (i) THE INHERENT RISK OF ERROR IN THE ACQUISITION, PROCESSING, AND INTERPRETATION OF GEOLOGICAL, GEOPHYSICAL AND RESERVE DATA AND INTERPRETATIVE DATA OF ALL KINDS, AND (ii) THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, STATUTORY, AT COMMON LAW OR OTHERWISE, AS TO THE ACCURACY, QUALITY OR COMPLETENESS OF THE CONFIDENTIAL INFORMATION. RECIPIENT AGREES THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES SHALL BE LIABLE TO

RECIPIENT OR ANY OTHER PERSONS IN CONTRACT, TORT, OR OTHERWISE RESULTING FROM USE OF OR RELIANCE UPON ANY CONFIDENTIAL INFORMATION BY RECIPIENT OR ITS REPRESENTATIVES. RECIPIENT ALSO AGREES THAT ONLY THOSE SPECIFIC REPRESENTATIONS AND WARRANTIES WHICH MAY BE MADE TO RECIPIENT OR ITS REPRESENTATIVES BY DISCLOSER IN A DEFINITIVE AGREEMENT COVERING THE TRANSACTION CONTEMPLATED HEREBY (WHEN AND IF THE SAME IS MADE) SHALL HAVE LEGAL EFFECT.

10. No failure or delay by Discloser in exercising any right, power, privilege, or remedy hereunder shall operate or be construed as a waiver thereof or preclude the exercise of any other or future right, power, privilege, or remedy. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the party so waiving. No waiver by a Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.

11. Neither Party may assign this Agreement or any of their rights or obligations hereunder without the prior written consent of the other Party and any such attempted assignment without such prior written consent shall be null and void. Any consents requested under this Section shall not be unreasonably withheld, conditioned or delayed.

12. This Agreement shall terminate eighteen (18) months from the date hereof.

13. This Agreement shall be binding upon each Party and their respective successors and permitted assigns.

14. Except as otherwise provided herein, all notices that are required or may be given pursuant to this Agreement shall be sufficient in all respects if given in writing and delivered personally, by facsimile, or by recognized courier service, as follows:

If to Recipient:

W&T Offshore Inc.
Nine Greenway Plaza, Suite 300
Houston, Texas 77046
Attn: Steve Schroeder
Telephone: 713-624-7258
Email:sschro@wtoffshore.com

If to Discloser:

Arena Energy, LP
2103 Research Forest Drive, Suite 400
The Woodlands, Texas 77380
Attn: SVP – Business Development
Telephone: 281-681-9500
Email: caps@arenaenergy.com

008

With a copy to:

    Arena Energy, LP
    2103 Research Forest Drive, Suite 400
    The Woodlands, Texas 77380
    Attn: SVP – General Counsel
    Telephone: 281-681-9500
    Email: sweatherholt@arenaenergy.com

15.   Without prejudice to any rights or remedies that Discloser or any of its Affiliates may have, Recipient acknowledges and agrees that neither damages nor an account of profits would be an adequate remedy for any breach by Recipient or its Representatives of the provisions of this Agreement and that, accordingly, Discloser shall be entitled to seek equitable relief including, but not limited to, injunctive relief and specific performance, without proof of actual damages, for any breach or anticipated or threatened breach of this Agreement. Recipient shall reimburse Discloser for any costs incurred including, but not limited to, attorneys' fees, costs of court, witness fees and expenses, claims, demands or liabilities arising directly or indirectly out of any such breach or anticipated or threatened breach.

16.   The invalidity of any one or more provisions of this Agreement shall not affect the validity of this Agreement as a whole, and in case of any such invalidity, this Agreement shall be construed as if the invalid provision had not been included herein.

17.   This Agreement may be executed in multiple counterparts, each of which taken together shall constitute one Agreement. This Agreement shall be effective when it has been executed and delivered by both Parties. A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

18.   No modifications or amendments to this Agreement shall be binding on the Parties unless and until such modifications or amendments are executed in writing by an authorized representative of each Party.

19.   This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to principles of conflict of law. Venue for any dispute between the Parties shall exclusively rest with any state or federal court located in Harris County, Texas.

20.   To the extent that any Confidential Information includes materials or other information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege or doctrine concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention, and mutual understanding that the sharing of such material or other information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or information or its continued protection under the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine as a result of disclosing any Confidential Information (including

Confidential Information related to pending or threatened litigation) to the Recipient or any of its Representatives.

21. Recipient hereby further acknowledges and agrees that Discloser would be irreparably injured by any breach of, or failure to comply with, this Agreement by Recipient or its Representatives and that money damages are an inadequate remedy for an actual or threatened breach of this Agreement or any failure to comply with this Agreement because of the difficulty of ascertaining the amount of damage that will be suffered by Discloser in the event of any such breach or failure to comply. Therefore, Recipient agrees to the granting of specific performance of this Agreement and injunctive or other equitable relief in favor of Discloser as a remedy for any such breach or failure to comply, without proof of actual damages, and Recipient further waives any requirement for the securing or posting of any bond in connection with any such remedy. Such remedy shall not be deemed to be the exclusive remedy for Recipient's breach of, or failure to comply with, this Agreement, but shall be in addition to all other remedies available at law or in equity. In the event of any breach of, or failure to comply with, this Agreement by Recipient or its Representatives, Recipient agrees to reimburse Discloser promptly upon demand for all out of pocket costs and expenses reasonably incurred by it and its Representatives in the enforcement of its rights hereunder (including, without limitation, reasonable fees and disbursements of counsel). Recipient hereby agrees to indemnify and hold harmless Discloser and its Representatives from and against any damage, claim, loss, obligation, liability, penalty, cost or expense (including reasonable fees and disbursements of counsel and the cost of enforcing this indemnity) arising out of or resulting from (i) any disclosure or use of Confidential Information contrary to the terms of this Agreement by Recipient or its Representatives, or (ii) any other breach of, or failure to comply with, the terms of this agreement by Recipient or its Representatives

\*       \*       \*       \*

IN WITNESS WHEREOF, the duly authorized representatives of the Parties have caused this Agreement to be executed on the date first written above.

**RECIPIENT**:                                                        **DISCLOSER**:

W&T Offshore, Inc.                                      ARENA ENERGY, LP
                                                            by ARENA ENERGY GP, LLC
                                                            its Sole General Partner

By: _____                                  By: _____
Name: Steve Schroeder                               Name: Scott C. Weatherholt
Title: Senior Vice President and                    Title: Senior Vice President – General
        Chief Technical Officer                            Counsel

## EXHIBIT A

TO THAT CERTAIN CONFIDENTIALITY AGREEMENT DATED *MAY 26TH*, 2020
BY AND BETWEEN
_W&T OFFSHORE, INC_, AS RECIPIENT,
AND
ARENA ENERGY, LP, AS DISCLOSER


### DESCRIPTION OF PROPERTIES



EXHIBIT "A"

Attached to an made a part of that certain
Confidentiality Agreement dated May _26Th_, 2020
By and between _WRT OFFSHORE, INC._ and
Arena Energy, LP

| Area Block | Lease |
|---|---|
| East Cameron 328 | G10638 |
| Eugene Island 38 | G24883 |
| Eugene Island 57 | G02601 |
| Eugene Island 58 | G02895 |
| Eugene Island 99 | G31369 |
| Eugene Island 100 | 00796 |
| Eugene Island 174 | G03782 |
| Eugene Island 181 | G04451 |
| Eugene Island 182 | G04452 |
| Eugene Island 214 | G00977 |
| Eugene Island 215 | G26033 |
| Eugene Island 215 | 00578 |
| Eugene Island 217 | G00978 |
| Eugene Island 217 | G36743 |
| Eugene Island 227 | 00809 |
| Eugene Island 227 | G36745 |
| Eugene Island 229 | G05505 |
| Eugene Island 230 | G00979 |
| Eugene Island 231 | G00980 |
| Eugene Island 237 | G00981 |
| Eugene Island 238 | G00982 |
| Eugene Island 251 | G03331 |
| Eugene Island 252 | G00983 |
| Eugene Island 253 | G35938 |
| Eugene Island 253 | G10741 |
| Eugene Island 254 | G36207 |
| Eugene Island 261 | G36208 |
| Eugene Island 262 | G36209 |
| Eugene Island 275 | G24910 |
| Eugene Island 276 | G00989 |

1

013

## EXHIBIT "A" (continued)

Attached to an made a part of that certain
Confidentiality Agreement dated May _26TH_, 2020
By and between _W&T OFFSHORE, INC._ and
Arena Energy, LP

| Area Block | Lease |
|---|---|
| Eugene Island 314 | G33636 |
| Eugene Island 314 | G02111 |
| Eugene Island 315 | G02112 |
| Eugene Island 316 | G05040 |
| Eugene Island 320 | G34823 |
| Eugene Island 320 | G36211 |
| Eugene Island 324 | G36118 |
| Eugene Island 325 | G36119 |
| Eugene Island 332 | G02613 |
| Eugene Island 338 | G02118 |
| Eugene Island 339 | G02318 |
| Eugene Island 340 | G36212 |
| Eugene Island 341 | G02914 |
| Eugene Island 346 | G14482 |
| Galveston 180 | G03228 |
| Galveston 192 | G03229 |
| Galveston 209 | G06093 |
| High Island 179 | G03236 |
| High Island 193 | G03237 |
| High Island A547 | G02705 |
| Matagorda Island 668 | G04547 |
| Matagorda Island 669 | G04065 |
| Mississippi Canyon 191 | G26241 |
| Mississippi Canyon 311 | G02968 |
| Mississippi Canyon 800 | G18292 |
| Main Pass 120 | G03197 |
| Main Pass 121 | G23969 |
| Main Pass 122 | G13964 |
| Main Pass 123 | G12088 |
| Main Pass 133 | G01633 |
| Main Pass 206 | G33128 |
| Main Pass 236 | G02955 |

014

EXHIBIT "A" (continued)

Attached to an made a part of that certain
Confidentiality Agreement dated May _26TH_, 2020
By and between _WRT OFFSHORE, INC._ and
Arena Energy, LP

| Area Block | Lease |
|---|---|
| South Marsh Island 192 | G24878 |
| South Pass 74 | G26144 |
| South Pass 82 | G05685 |
| South Pass 83 | G05052 |
| South Pelto 25 | G14535 |
| South Timbalier 35 | G03336 |
| South Timbalier 36 | G02624 |
| South Timbalier 37 | G02625 |
| South Timbalier 38 | G09637 |
| South Timbalier 51 | G01240 |
| South Timbalier 52 | G01241 |
| South Timbalier 128 | 00498 |
| South Timbalier 129 | 00465 |
| South Timbalier 130 | 00456 |
| South Timbalier 131 | 00457 |
| South Timbalier 134 | 00461 |
| South Timbalier 135 | 00462 |
| South Timbalier 148 | G01960 |
| South Timbalier 151 | 00463 |
| South Timbalier 152 | 00464 |
| South Timbalier 161 | G01248 |
| South Timbalier 176 | G01259 |
| South Timbalier 177 | G01260 |
| South Timbalier 188 | G01899 |
| South Timbalier 189 | G01572 |
| Vermilion 52 | G30183 |
| Vermilion 71 | G21592 |
| Vermilion 72 | G27851 |
| Vermilion 325 | G36200 |
| Vermilion 341 | G33607 |
| Vermilion 342 | G33608 |

015

EXHIBIT "A" (continued)

Attached to an made a part of that certain
Confidentiality Agreement dated May _26TH_, 2020
By and between _WBT OFFSHORE, INC._ and
Arena Energy, LP

| Area Block | Lease |
| --- | --- |
| West Cameron 522 | G34033 |
| West Cameron 543 | G12802 |
| West Cameron 544 | G14342 |
| West Cameron 639 | G02027 |
| West Cameron 648 | G04268 |
| West Delta 72 | G01082 |
| West Delta 73 | G01083 |
| West Delta 85 | G04895 |
| West Delta 86 | G04243 |
| West Delta 117 | G35951 |
| West Delta 118 | G36227 |
| West Delta 133 | G01106 |

4

016

## CONFIDENTIALITY AGREEMENT

THIS CONFIDENTIALITY AGREEMENT ("**Agreement**") is entered into the ___ day of _____, 2020 by and between Arena Energy, LP, a Delaware limited partnership with offices located at 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380 on behalf of itself and its subsidiaries (collectively, the "**Discloser**"), and W&T Offshore, Inc., a legal entity formed under the laws of Texas with offices located at Nine Greenway Plaza, Suite 300, Houston, Texas 77046 ("**Recipient**").  Discloser and Recipient are sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**".

WHEREAS, Recipient has requested that it be permitted to examine certain information in the possession of and Discloser regarding the oil and gas properties, interests and assets owned by Discloser and more particularly depicted within the yellow blocks and as further identified and described on Exhibit "A" attached hereto and incorporated herein (the "Properties") for the sole purpose of determining whether or not to pursue the opportunity of entering into an agreement with Discloser for the purchase of the Properties (the "Transaction") and for negotiating any such agreement (the "Purpose"); and

WHEREAS, in order to enable Recipient to evaluate the Properties solely for the Purpose, Discloser has agreed to furnish Recipient with certain confidential and proprietary data and information pursuant to this Agreement which may include, but is not limited to, geological and geophysical information; well logs; engineering, drilling, and wellbore information and reports; cashflow forecasts; reserve studies; maps; field studies, financial and tax information and analyses; leases, licenses, concessions, permits, and contracts of all kinds; production, price, and reserves information; and agreements for production transportation, treating, processing, and marketing regarding the Properties (collectively, "**Materials**").

NOW, THEREFORE, in consideration of the disclosure and divulgence of the Materials to Recipient and of the covenants herein contained, Recipient and Discloser hereby agree as follows:

1.  Except as provided in Sections 2 and 3 below, Recipient and its Representatives (defined below) shall not, without the prior written consent of Discloser:

    (a) Use or allow the use of the Materials or any notes, copies, summaries, analyses, studies, forecasts, or other materials, information, or conclusions derived from the inspection, examination, or evaluation of the Materials, whether prepared by the Discloser or the Recipient or any of their respective Representatives or others which contain or reflect or are generated from, any of the Materials (collectively, "**Derivatives**") except for the Purpose;

    (b) Disclose or allow the disclosure to any person (defined below) of all or any portion of the Materials or Derivatives (collectively, "**Confidential Information**");

    (c) Disclose or allow the disclosure to any person of any correlation existing between the Confidential Information and public information; and

    (d) Disclose or allow the disclosure to any person the fact that the Confidential

Information has been made available to Recipient or that discussions or negotiations are taking place concerning the Properties, the Transaction or the Purpose or any of the terms, conditions, or other facts with respect thereto, including the status thereof; and

(e)  Treat, and cause to be to treated, all Confidential Information as confidential.

As used herein, the term "**person**" shall be broadly interpreted to include the media, any individual, and any corporation, partnership, group, governmental unit or agency, or any other entity.

As used herein, the term "**Representatives**" shall mean, with respect to a Party, its Affiliates (defined below) and its and its Affiliate's officers, directors, employees, agents and advisors (including its and its Affiliates' financial advisors, attorneys, accountants and other consultants), and, to the extent permitted by Section 7, any actual or potential financing sources (debt, equity or otherwise) or co-bidders.

2.      Recipient may make the disclosures described in Section 1 without Discloser's prior written consent:

(i) Subject to Section 5 and to the extent the Confidential Information must be disclosed under applicable law, governmental order, decree, regulation or rule, or stock exchange regulations; provided that Recipient or its Representatives, shall make all commercial reasonable efforts to give prompt notice to Discloser prior to such disclosure and shall limit the scope of such disclosure to the extent specifically required such law, governmental order, decree, regulation or rule, or stock exchange regulations.

(ii) To the following Recipient's Representatives who have a strict need to know for the Purpose:
   (a)  Officers, directors, employees of Recipient;

   (b)  Officers, directors and employees of its Affiliates ("Affiliates" means any company or legal entity that controls, or is controlled by, or that is controlled by an entity that controls, a Party.  "Control" means the direct or indirect ownership of more than fifty (50) percent of the voting rights in a company or other legal entity or the contractual right to direct the management of such company or legal entity.); and

   (c)  any professional consultant or agent retained by Recipient or its Affiliates for the purpose of evaluating the Confidential Information, including its and its Affiliates' financial advisors, attorneys, accountants and other consultants.

Prior to making any disclosures to any person under Section 2(ii)(a) or (b), Recipient shall advise the same of the restrictions of confidentiality imposed upon them as Representatives of Recipient in respect of the Confidential Information subject to this Agreement, and in respect of any person under Section 2.ii(c), Recipient shall obtain an undertaking of confidentiality from such persons substantially in the same terms and content of this Agreement; provided, however, that in the case of outside legal counsel, the Recipient shall only be required to procure that such legal counsel is

bound by an obligation of confidentiality. Recipient agrees to and shall be liable for any breach of this Agreement by any of its Representatives.

3.      The obligations in Section 1 shall not apply to:

   (a) Information which at the time of disclosure hereunder was previously developed by Recipient or its Representatives and already in their possession;

   (b) Information which at the time of disclosure hereunder was in the public domain or which thereafter becomes part of the public domain through no action or failure to act on the part of Recipient or its Representatives; and

   (c) Information which at the time of disclosure hereunder was or is thereafter lawfully acquired by Recipient or its Representatives from a source other than Discloser or its Representatives, provided that Recipient and its Representatives reasonably believe, after diligent inquiry, that such source was not under an obligation of confidence with respect thereto and did not acquire such information directly or indirectly from Discloser.

4.      Discloser retains all rights, titles, and interests in and to the Materials. At any time when requested in writing by Discloser, Recipient shall promptly, but in no more than five (5) business days, return to Discloser all Materials and destroy all Derivatives without retaining any copies thereof. Notwithstanding the above, Recipient may retain such electronic copies of the Confidential Information as are made by Recipient in the normal course of its routine electronic file back-up procedures provided that Recipient shall not access or use such Confidential Information and such files shall be destroyed in accordance with such procedures, but in no event later than six (6) months after Recipient's receipt of the written request described above. Upon Discloser's request, Recipient shall promptly provide written certification to Discloser that it has complied with the terms of this Section 4. Notwithstanding the return of the Materials or the destruction of the Derivatives, Recipient shall continue to be bound by its confidentiality and other obligations under the terms of this Agreement.

   However, notwithstanding anything contrary contained in this Agreement, it is recognized and agreed that (i) Recipient and its Representatives, Affiliates and its Representatives my retain mental impressions as a result of having reviewed the Confidential Information, and this Agreement shall not in any manner impede or restrict Recipient, its Representatives, its Affiliates or its Representatives from engaging in any aspect of the oil and gas business, or of any other business, outside of the Properties, and (ii) Recipient may already own or hereafter consider acquiring interests outside of the Properties and nothing contained in this Agreement shall in any manner impede or strict its right to do so.

5.      If Recipient or its Representatives are requested or required by oral question, written interrogatories, request for information or documents, subpoena, or similar process to disclose Confidential Information, Recipient shall make all reasonable efforts to promptly notify Discloser of such request, requirement, or proceeding in order to afford Discloser an opportunity to seek a protective order or other assurance that the Confidential Information will not be disclosed or disseminated by the recipient(s) thereof. Upon Discloser's request,

Recipient shall cooperate with Discloser to seek and obtain such a protective order or other assurance at the sole cost and expense of Discloser. If Discloser is unable to obtain or does not seek such a protective order or other assurance, then Recipient may disclose only such portions of the Confidential Information that Recipient or its Representatives are advised by their counsel they are legally compelled to disclose under pain or liability for contempt, censure, or penalty.

6.      This Agreement shall not be construed or implied to, and nothing herein shall, obligate Discloser to (i) furnish any specific information or type of information to Recipient or its Representatives or (ii) enter into any type of further agreement with Recipient. Discloser may reject any and all bids for the Properties at any time, may change the transaction procedures and may enter into any agreement with any other person, in each case at any time and without notice to the Recipient or any of its Representatives. There shall be no binding agreement between Discloser and Recipient for a Transaction unless and until a final definitive agreement for the Transaction has been fully signed and delivered by both Discloser and Recipient.

7.      Recipient represents that, other than as disclosed to Discloser in writing prior to the execution of this Agreement, neither Recipient nor any of its Representatives has entered into, directly or indirectly, any agreement or understanding with any person (other than any of Recipient's Representatives) with respect to a possible Transaction or that could otherwise affect such person's decisions or actions with respect to a possible transaction involving the Discloser.

8.      Without the prior written consent of the Discloser, neither Recipient nor any of its Representatives who are aware of the possible Transaction will initiate or cause to be initiated (other than through the specific contacts designated in writing by Discloser) any: (a) communication concerning the Confidential Information, the Transaction or the Discloser and its Affiliates; (b) requests for meetings with management in connection with a possible Transaction; or (c) communication relating to the business of Discloser or any of its Affiliates or a possible Transaction, in each case with any officer, director or employee of Discloser or any of its Affiliates. Additionally, Recipient will not communicate with any contractor, customer, supplier, ~~lender~~ or vendor of Discloser or any of its Affiliates regarding the Discloser or its Affiliates, including, without limitation, in connection with the possible Transaction (or Recipient's evaluation thereof) without the prior written consent of the Discloser.  Despite anything in this Agreement to the contrary, and for the avoidance of doubt, Recipient is permitted to contact any creditor of Discloser or its Affiliates and discuss any aspect of the Confidential Information or Transaction with that creditor and acquire any portion of the Discloser's or its Affiliates outstanding debt.

9.      Discloser represents and warrants that it has the right and authority to disclose the Confidential Information to Recipient. RECIPIENT ACKNOWLEDGES (i) THE INHERENT RISK OF ERROR IN THE ACQUISITION, PROCESSING, AND INTERPRETATION OF GEOLOGICAL, GEOPHYSICAL AND RESERVE DATA AND INTERPRETATIVE DATA OF ALL KINDS, AND (ii) THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES  MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, STATUTORY, AT COMMON LAW OR OTHERWISE, AS TO THE ACCURACY, QUALITY OR COMPLETENESS OF THE CONFIDENTIAL INFORMATION.   RECIPIENT AGREES THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES SHALL BE LIABLE TO

RECIPIENT OR ANY OTHER PERSONS IN CONTRACT, TORT, OR OTHERWISE RESULTING FROM USE OF OR RELIANCE UPON ANY CONFIDENTIAL INFORMATION BY RECIPIENT OR ITS REPRESENTATIVES.  RECIPIENT ALSO AGREES THAT ONLY THOSE SPECIFIC REPRESENTATIONS AND WARRANTIES WHICH MAY BE MADE TO RECIPIENT OR ITS REPRESENTATIVES BY DISCLOSER IN A DEFINITIVE AGREEMENT COVERING THE TRANSACTION CONTEMPLATED HEREBY (WHEN AND IF THE SAME IS MADE) SHALL HAVE LEGAL EFFECT.

10.  No failure or delay by Discloser in exercising any right, power, privilege, or remedy hereunder shall operate or be construed as a waiver thereof or preclude the exercise of any other or future right, power, privilege, or remedy. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the party so waiving. No waiver by a Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.

11.  Neither Party may assign this Agreement or any of their rights or obligations hereunder without the prior written consent of the other Party and any such attempted assignment without such prior written consent shall be null and void.  Any consents requested under this Section shall not be unreasonably withheld, conditioned or delayed.

12.  This Agreement shall terminate eighteen (18) months from the date hereof.

13.  This Agreement shall be binding upon each Party and their respective successors and permitted assigns.

14.  Except as otherwise provided herein, all notices that are required or may be given pursuant to this Agreement shall be sufficient in all respects if given in writing and delivered personally, by facsimile, or by recognized courier service, as follows:

If to Recipient:

> W&T Offshore Inc.
> Nine Greenway Plaza, Suite 300
> Houston, Texas 77046
> Attn:  Steve Schroeder
> Telephone: 713-624-7258
> Email:sschro@wtoffshore.com

If to Discloser:

> Arena Energy, LP
> 2103 Research Forest Drive, Suite 400
> The Woodlands, Texas 77380
> Attn: SVP – Business Development
> Telephone: 281-681-9500
> Email: caps@arenaenergy.com

021

With a copy to:

> Arena Energy, LP
> 2103 Research Forest Drive, Suite 400
> The Woodlands, Texas 77380
> Attn: SVP – General Counsel
> Telephone: 281-681-9500
> Email: sweatherholt@arenaenergy.com

15.    Without prejudice to any rights or remedies that Discloser or any of its Affiliates may have, Recipient acknowledges and agrees that neither damages nor an account of profits would be an adequate remedy for any breach by Recipient or its Representatives of the provisions of this Agreement and that, accordingly, Discloser shall be entitled to seek equitable relief including, but not limited to, injunctive relief and specific performance, without proof of actual damages, for any breach or anticipated or threatened breach of this Agreement. Recipient shall reimburse Discloser for any costs incurred including, but not limited to, attorneys' fees, costs of court, witness fees and expenses, claims, demands or liabilities arising directly or indirectly out of any such breach or anticipated or threatened breach.

16.    The invalidity of any one or more provisions of this Agreement shall not affect the validity of this Agreement as a whole, and in case of any such invalidity, this Agreement shall be construed as if the invalid provision had not been included herein.

17.    This Agreement may be executed in multiple counterparts, each of which taken together shall constitute one Agreement. This Agreement shall be effective when it has been executed and delivered by both Parties. A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

18.    No modifications or amendments to this Agreement shall be binding on the Parties unless and until such modifications or amendments are executed in writing by an authorized representative of each Party.

19.    This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to principles of conflict of law.  Venue for any dispute between the Parties shall exclusively rest with any state or federal court located in Harris County, Texas.

20.    To the extent that any Confidential Information includes materials or other information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege or doctrine concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention, and mutual understanding that the sharing of such material or other information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or information or its continued protection under the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine as a result of disclosing any Confidential Information (including

Confidential Information related to pending or threatened litigation) to the Recipient or any of its Representatives.

21. Recipient hereby further acknowledges and agrees that Discloser would be irreparably injured by any breach of, or failure to comply with, this Agreement by Recipient or its Representatives and that money damages are an inadequate remedy for an actual or threatened breach of this Agreement or any failure to comply with this Agreement because of the difficulty of ascertaining the amount of damage that will be suffered by Discloser in the event of any such breach or failure to comply. Therefore, Recipient agrees to the granting of specific performance of this Agreement and injunctive or other equitable relief in favor of Discloser as a remedy for any such breach or failure to comply, without proof of actual damages, and Recipient further waives any requirement for the securing or posting of any bond in connection with any such remedy. Such remedy shall not be deemed to be the exclusive remedy for Recipient's breach of, or failure to comply with, this Agreement, but shall be in addition to all other remedies available at law or in equity. In the event of any breach of, or failure to comply with, this Agreement by Recipient or its Representatives, Recipient agrees to reimburse Discloser promptly upon demand for all out of pocket costs and expenses reasonably incurred by it and its Representatives in the enforcement of its rights hereunder (including, without limitation, reasonable fees and disbursements of counsel). Recipient hereby agrees to indemnify and hold harmless Discloser and its Representatives from and against any damage, claim, loss, obligation, liability, penalty, cost or expense (including reasonable fees and disbursements of counsel and the cost of enforcing this indemnity) arising out of or resulting from (i) any disclosure or use of Confidential Information contrary to the terms of this Agreement by Recipient or its Representatives, or (ii) any other breach of, or failure to comply with, the terms of this agreement by Recipient or its Representatives

\*     \*     \*     \*

023

IN WITNESS WHEREOF, the duly authorized representatives of the Parties have caused this Agreement to be executed on the date first written above.

**RECIPIENT**:

W&T Offshore, Inc.

**DISCLOSER**:

ARENA ENERGY, LP
by ARENA ENERGY GP, LLC
its Sole General Partner

By:_____

Name:_Steve Schroeder_____

Title:_Senior Vice President and___

     Chief Technical Officer

By:_____

Name: Scott C. Weatherholt

Title: Senior Vice President – General

     Counsel

**EXHIBIT A**

TO THAT CERTAIN CONFIDENTIALITY AGREEMENT DATED _____, 2020
BY AND BETWEEN
_____, AS RECIPIENT,
AND
ARENA ENERGY, LP, AS DISCLOSER

DESCRIPTION OF PROPERTIES



025