# Exhibit 19

August 2, 2020 email from Gregory Suellentrop to William Williford re updated draft of NDA

| | |
|---|---|
| **From:** | Suellentrop, Gregory |
| **To:** | William Williford |
| **Cc:** | Flood, Curtis; Martz, Eric; Tracy W. Krohn |
| **Subject:** | RE: [EXTERNAL]RE: [EXTERNAL]RE: [EXTERNAL] Arena Offer - GOM Shelf Assets |
| **Attachments:** | Arena - W&T Confidentiality Agreement (K&E 8-2-20) .docx |
| | Redline.pdf |

William,

Please find the updated draft of the NDA attached, along with the redline. We've tried to find a compromise in regards to the concerns around paragraph 8.

Please let us know if you have any questions.

Best,
Greg

**Greg Suellentrop**
EVERCORE | **O** 713.427.5767 | **M** 832.206.3880 | Gregory.Suellentrop@evercore.com

**From:** William Williford <wwilliford@wtoffshore.com>
**Sent:** Saturday, August 1, 2020 4:53 PM
**To:** Suellentrop, Gregory <Gregory.Suellentrop@Evercore.com>
**Cc:** Flood, Curtis <Curtis.Flood@Evercore.com>; Martz, Eric <Eric.Martz@Evercore.com>; Tracy W. Krohn <tracy@wtoffshore.com>
**Subject:** Re: [EXTERNAL]RE: [EXTERNAL]RE: [EXTERNAL]RE: [EXTERNAL] Arena Offer - GOM Shelf Assets

**CAUTION: This email originated from outside of Evercore. Do not click links or open attachments unless you recognize the sender and are expecting the attachment or link.**

Gregory,

Per your request, I have attached the redline of the NDA that we are ready to sign.  Please review and let us know timing to get this approved and signed.  I would also request a full copy of Arena's 2019 financials.  We have seen a brief excerpt of Arena's  2019 financials and request from you the full, audited financials of the company  for 2019.  We need to review these financials in order to complete our evaluation. Please provide them to us immediately, time is of the essence.

Best regards,

William

## CONFIDENTIALITY AGREEMENT

THIS CONFIDENTIALITY AGREEMENT ("**Agreement**") is entered into the 1st day of August, 2020 by and between Arena Energy, LP, a Delaware limited partnership with offices located at 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380 on behalf of itself and its subsidiaries (collectively, the "**Discloser**"), and W&T Offshore Inc., a legal entity formed under the laws of Texas with offices located at 9 Greenway Plaza Suite 300 Houston, Texas 77046 ("**Recipient**"). Discloser and Recipient are sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**".

WHEREAS, Recipient has requested that it be permitted to examine certain information in the possession of Discloser regarding the oil and gas properties, interests and assets described on Exhibit "A" attached hereto and incorporated herein (the "Properties") for the sole purpose of determining whether or not to pursue the opportunity of entering into an agreement with Discloser for the purchase of the Properties (the "Transaction") and for negotiating any such agreement (the "Purpose"); and

WHEREAS, in order to enable Recipient to evaluate the Properties solely for the Purpose, Discloser has agreed to furnish Recipient with certain confidential and proprietary data and information pursuant to this Agreement which may include, but is not limited to, geological and geophysical information; well logs; engineering, drilling, and wellbore information and reports; cashflow forecasts; reserve studies; maps; field studies, financial and tax information and analyses; leases, licenses, concessions, permits, and contracts of all kinds; production, price, and reserves information; and agreements for production transportation, treating, processing, and marketing regarding the Properties (collectively, "**Materials**").

NOW, THEREFORE, in consideration of the disclosure and divulgence of the Materials to Recipient and of the covenants herein contained, Recipient and Discloser hereby agree as follows:

1.      Except as provided in Sections 2 , 3 and 8 below, Recipient and its Representatives (defined below) shall, without the prior written consent of Discloser:

   (a) Not use or allow the use of the Materials or any notes, copies, summaries, analyses, studies, forecasts, or other materials, information, or conclusions derived from the inspection, examination, or evaluation of the Materials, whether prepared by the Discloser or the Recipient or any of their respective Representatives or others which contain or reflect or are generated from, any of the Materials (collectively, "**Derivatives**") except for the Purpose;

   (b) Not disclose or allow the disclosure to any person (defined below) of all or any portion of the Materials or Derivatives (collectively, "**Confidential Information**");

   (c) Not disclose or allow the disclosure to any person of any correlation existing between the Confidential Information and public information; and

   (d) Not disclose or allow the disclosure to any person the fact that the Confidential Information has been made available to Recipient or that discussions or

negotiations are taking place concerning the Properties, the Transaction or the Purpose or any of the terms, conditions, or other facts with respect thereto, including the status thereof; and

(e) Treat, and cause to be to treated, all Confidential Information as strictly confidential.

As used herein, the term "**person**" shall be broadly interpreted to include the media, any individual, and any corporation, partnership, group, governmental unit or agency, or any other entity.

As used herein, the term "**Representatives**" shall mean, with respect to a Party, its affiliates and its and its affiliate's officers, directors, employees, agents and advisors (including its and its affiliates' financial advisors, attorneys, accountants and other consultants), and, to the extent permitted by Section 7, any actual or potential financing sources (debt, equity or otherwise) or co-bidders.

2.      Notwithstanding the provisions of Section 1, Recipient may make the disclosures described therein without Discloser's prior written consent to Recipient's Representatives who (i) have a strict need to know for the Purpose, and (ii) have agreed in writing prior to being given access to the Confidential Information to be bound by the terms of this Agreement to the same extent as if they were parties hereto. Recipient agrees to and shall be liable for any breach of this Agreement by any of its Representatives.

3.      The obligations in Section 1 shall not apply to:

(a) Information which at the time of disclosure hereunder was previously developed by Recipient or its Representatives and already in their possession;

(b) Information which at the time of disclosure hereunder was in the public domain or which thereafter becomes part of the public domain through no action or failure to act on the part of Recipient or its Representatives; and

(c) Information which at the time of disclosure hereunder was or is thereafter lawfully acquired by Recipient or its Representatives from a source other than Discloser or its Representatives, provided that Recipient and its Representatives reasonably believe, after diligent inquiry, that such source was not under an obligation of confidence with respect thereto and did not acquire such information directly or indirectly from Discloser.

4.      Discloser retains all rights, titles, and interests in and to the Materials. At any time when requested in writing by Discloser, Recipient shall promptly, but in no more than five (5) business days, return to Discloser all Materials and destroy all Derivatives without retaining any copies thereof. Notwithstanding the above, Recipient may retain such electronic copies of the Confidential Information as are made by Recipient in the normal course of its routine electronic file back-up procedures provided that Recipient shall not access or use such Confidential Information and such files shall be destroyed in accordance with such procedures, but in no event later than six (6) months after

Recipient's receipt of the written request described above. Upon Discloser's request, Recipient shall promptly provide written certification to Discloser that it has complied with the terms of this Section 4. Notwithstanding the return of the Materials or the destruction of the Derivatives, Recipient shall continue to be bound by its confidentiality and other obligations under this Agreement.

5.      If Recipient or its Representatives are requested or required by oral question, written interrogatories, request for information or documents, subpoena, or similar process to disclose Confidential Information, Recipient shall promptly notify Discloser of such request, requirement, or proceeding in order to afford Discloser an opportunity to seek a protective order or other assurance that the Confidential Information will not be disclosed or disseminated by the recipient(s) thereof. Upon Discloser's request, Recipient shall cooperate with Discloser to seek and obtain such a protective order or other assurance. If Discloser is unable to obtain or does not seek such a protective order or other assurance, then Recipient may disclose only such portions of the Confidential Information that Recipient or its Representatives are advised by their counsel they are legally compelled to disclose under pain or liability for contempt, censure, or penalty.

6.      This Agreement shall not be construed or implied to, and nothing herein shall, obligate Discloser to (i) furnish any specific information or type of information to Recipient or its Representatives or (ii) enter into any type of further agreement with Recipient. Discloser may reject any and all bids for the Properties at any time, may change the transaction procedures and may enter into any agreement with any other person, in each case at any time and without notice to the Recipient or any of its Representatives. There shall be no binding agreement between Discloser and Recipient for a Transaction unless and until a final definitive agreement for the Transaction has been fully signed and delivered by both Discloser and Recipient.

7.      Recipient represents that, other than as disclosed to Discloser in writing prior to the execution of this Agreement, neither Recipient nor any of its Representatives has entered into, directly or indirectly, any agreement or understanding with any person (other than any of Recipient's Representatives) with respect to a possible Transaction or that could otherwise affect such person's decisions or actions with respect to a possible transaction involving the Discloser.

8.      Without the prior written consent of the Discloser, neither Recipient nor any of its Representatives who are aware of the possible Transaction will initiate or cause to be initiated (other than through the specific contacts designated in writing by Discloser) any: (a) communication concerning the Confidential Information, the Transaction or the Discloser and its affiliates; (b) requests for meetings with management in connection with a possible Transaction; or (c) communication relating to the business of Discloser or any of its affiliates or a possible Transaction, in each case with any officer, director or employee of Discloser or any of its affiliates. Additionally, Recipient will not, directly or indirectly, (i) communicate with any contractor, customer, lender or creditor of Discloser or any of its affiliates regarding the Discloser or its affiliates, including, without limitation, in connection with the possible Transaction (or Recipient's evaluation thereof), or (ii) acquire (whether through assignment, purchase, participation, tender, exchange or otherwise) any interest in any claims against, or any debt of, equity interests in or other securities of, the Discloser or any of its affiliates, in each case without the prior written consent of the Discloser.

Notwithstanding the foregoing, the Recipient shall be permitted to communicate with Wells Fargo Bank, National Association, solely in its capacity as administrative agent (the "**RBL Facility Agent**") under that certain Second Amended and Restated Credit Agreement, dated as of December 30, 2009 (as amended and as may be amended hereafter, the "**RBL Facility**"), among the Discloser, as borrower, each of the lenders from time to time party thereto, and the RBL Facility Agent, as administrative agent, regarding the Discloser or any of its affiliates, including without limitation, in connection with the possible Transaction (or Recipient's evaluation thereof); provided, however, prior to any such communication between the RBL Facility Agent and Recipient, the RBL Facility Agent shall first agree in a written undertaking delivered to Recipient and Discloser not to disclose (y) any aspect of such communications, including that communications are ongoing between W&T and the RBL Facility Agent, with the other lenders party to the RBL Facility without first obtaining the express written consent of Discloser, and (z) any information about any other bids, bidders, transactions, or potential transactions regarding the Properties.

9.    RECIPIENT ACKNOWLEDGES (i) THE INHERENT RISK OF ERROR IN THE ACQUISITION, PROCESSING, AND INTERPRETATION OF GEOLOGICAL, GEOPHYSICAL AND RESERVE DATA AND INTERPRETATIVE DATA OF ALL KINDS, AND (ii) THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, STATUTORY, AT COMMON LAW OR OTHERWISE, AS TO THE ACCURACY, QUALITY OR COMPLETENESS OF THE CONFIDENTIAL INFORMATION. RECIPIENT AGREES THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES SHALL BE LIABLE TO RECIPIENT OR ANY OTHER PERSONS IN CONTRACT, TORT, OR OTHERWISE RESULTING FROM USE OF OR RELIANCE UPON ANY CONFIDENTIAL INFORMATION BY RECIPIENT OR ITS REPRESENTATIVES. RECIPIENT ALSO AGREES THAT ONLY THOSE SPECIFIC REPRESENTATIONS AND WARRANTIES WHICH MAY BE MADE TO RECIPIENT OR ITS REPRESENTATIVES BY DISCLOSER IN A DEFINITIVE AGREEMENT COVERING THE TRANSACTION CONTEMPLATED HEREBY (WHEN AND IF THE SAME IS MADE) SHALL HAVE LEGAL EFFECT.

10.    No failure or delay by Discloser in exercising any right, power, privilege, or remedy hereunder shall operate or be construed as a waiver thereof or preclude the exercise of any other or future right, power, privilege, or remedy. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the party so waiving. No waiver by a Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.

11.    Neither Party may assign this Agreement or any of their rights or obligations hereunder without the prior written consent of the other Party and any such attempted assignment without such prior written consent shall be null and void.  Any consents requested under this Section shall not be unreasonably withheld, conditioned or delayed.

12.    This Agreement shall terminate eighteen (18) months from the date hereof.

13.    This Agreement shall be binding upon each Party and their respective successors and

permitted assigns.

14.   Except as otherwise provided herein, all notices that are required or may be given pursuant to this Agreement shall be sufficient in all respects if given in writing and delivered personally, by facsimile, or by recognized courier service, as follows:

If to Recipient:

W&T Offshore Inc.
9 Greenway Plaza Suite 300
Houston, Texas 77046
Attn: William Williford, EVP GOM Operations
Telephone:
Email: wwilliford@wtoffshore.com

If to Discloser:

Arena Energy, LP
2103 Research Forest Drive, Suite 400
The Woodlands, Texas 77380
Attn: Ed Menger, Interim General Counsel
Telephone: 281-681-9500
Email: EMenger@arenaenergy.com

15.   Without prejudice to any rights or remedies that Discloser or any of its affiliates may have, Recipient acknowledges and agrees that neither damages nor an account of profits would be an adequate remedy for any breach by Recipient or its Representatives of the provisions of this Agreement and that, accordingly, Discloser shall be entitled to seek equitable relief including, but not limited to, injunctive relief and specific performance, without proof of actual damages, for any breach or anticipated or threatened breach of this Agreement. Recipient shall reimburse Discloser for any costs incurred including, but not limited to, attorneys' fees, costs of court, witness fees and expenses, claims, demands or liabilities arising directly or indirectly out of any such breach or anticipated or threatened breach.

16.   The invalidity of any one or more provisions of this Agreement shall not affect the validity of this Agreement as a whole, and in case of any such invalidity, this Agreement shall be construed as if the invalid provision had not been included herein.

17.   This Agreement may be executed in multiple counterparts, each of which taken together shall constitute one Agreement. This Agreement shall be effective when it has been executed and delivered by both Parties. A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

18.   No modifications or amendments to this Agreement shall be binding on the Parties unless and until such modifications or amendments are executed in writing by an authorized representative of each Party.

19. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to principles of conflict of law. Venue for any dispute between the Parties shall exclusively rest with any state or federal court located in Harris County, Texas.

20. To the extent that any Confidential Information includes materials or other information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege or doctrine concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention, and mutual understanding that the sharing of such material or other information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or information or its continued protection under the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine as a result of disclosing any Confidential Information (including Confidential Information related to pending or threatened litigation) to the Recipient or any of its Representatives.

21. Recipient hereby further acknowledges and agrees that Discloser would be irreparably injured by any breach of, or failure to comply with, this Agreement by Recipient or its Representatives and that money damages are an inadequate remedy for an actual or threatened breach of this Agreement or any failure to comply with this Agreement because of the difficulty of ascertaining the amount of damage that will be suffered by Discloser in the event of any such breach or failure to comply. Therefore, Recipient agrees to the granting of specific performance of this Agreement and injunctive or other equitable relief in favor of Discloser as a remedy for any such breach or failure to comply, without proof of actual damages, and Recipient further waives any requirement for the securing or posting of any bond in connection with any such remedy. Such remedy shall not be deemed to be the exclusive remedy for Recipient's breach of, or failure to comply with, this Agreement, but shall be in addition to all other remedies available at law or in equity. In the event of any breach of, or failure to comply with, this Agreement by Recipient or its Representatives, Recipient agrees to reimburse Discloser promptly upon demand for all out of pocket costs and expenses reasonably incurred by it and its Representatives in the enforcement of its rights hereunder (including, without limitation, reasonable fees and disbursements of counsel). Recipient hereby agrees to indemnify and hold harmless Discloser and its Representatives from and against any damage, claim, loss, obligation, liability, penalty, cost or expense (including reasonable fees and disbursements of counsel and the cost of enforcing this indemnity) arising out of or resulting from (i) any disclosure or use of Confidential Information contrary to the terms of this Agreement by Recipient or its Representatives, or (ii) any other breach of, or failure to comply with, the terms of this agreement by Recipient or its Representatives

*     *     *     *

     IN WITNESS WHEREOF, the duly authorized representatives of the Parties have caused this Agreement to be executed on the date first written above.

**RECIPIENT**:                                        **DISCLOSER**:

W&T OFFSHORE INC.                        ARENA ENERGY, LP
                                                        By: Arena Energy 2020 II GP, LLC,
                                                            its general partner
                                                        By: W.R. Day Energy Holdings, LP,
By:_____                its sole member
Name:_____          By: Arena Energy 2020 GP, LLC,
Title:_____              its general partner
                                                        By: Arena Energy GP, LLC,
                                                            its sole member


                                                        By:_____
                                                        Name: John Edward Menger
                                                        Title: Interim General Counsel

## EXHIBIT A

TO THAT CERTAIN CONFIDENTIALITY AGREEMENT DATED _____, 2020
BY AND BETWEEN
_____, AS RECIPIENT,
AND
ARENA ENERGY, LP, AS DISCLOSER

## DESCRIPTION OF PROPERTIES



## CONFIDENTIALITY A G R E E M E N T

THIS CONFIDENTIALITY AGREEMENT ("**Agreement**") is entered into the 1st day of August, 2020 by and between Arena Energy, LP, a Delaware limited partnership with offices located at 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380 on behalf of itself and its subsidiaries (collectively, the "**Discloser**"), and W&T Offshore Inc., a legal entity formed under the laws of Texas with offices located at 9 Greenway Plaza Suite 300 Houston, Texas 77046 ("**Recipient**").  Discloser and Recipient are sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**".

WHEREAS, Recipient has requested that it be permitted to examine certain information in the possession of Discloser regarding the oil and gas properties, interests and assets described on Exhibit "A" attached hereto and incorporated herein (the "Properties") for the sole purpose of determining whether or not to pursue the opportunity of entering into an agreement with Discloser for the purchase of the Properties (the "Transaction") and for negotiating any such agreement (the "Purpose"); and

WHEREAS, in order to enable Recipient to evaluate the Properties solely for the Purpose, Discloser has agreed to furnish Recipient with certain confidential and proprietary data and information pursuant to this Agreement which may include, but is not limited to, geological and geophysical information; well logs; engineering, drilling, and wellbore information and reports; cashflow forecasts; reserve studies; maps; field studies, financial and tax information and analyses; leases, licenses, concessions, permits, and contracts of all kinds; production, price, and reserves information; and agreements for production transportation, treating, processing, and marketing regarding the Properties (collectively, "**Materials**").

NOW, THEREFORE, in consideration of the disclosure and divulgence of the Materials to Recipient and of the covenants herein contained, Recipient and Discloser hereby agree  as follows:

1.       Except as provided in Sections 2 , 3 and 8 below, Recipient and its Representatives (defined below) shall not, without the prior written consent of Discloser:

   (a) Use**Not use** or allow the use of the Materials or any notes, copies, summaries, analyses, studies, forecasts, or other materials, information, or conclusions derived from the inspection, examination, or evaluation of the Materials, whether prepared by the Discloser or the Recipient or any of their respective Representatives or others which contain or reflect or are generated from, any of the Materials (collectively,  "**Derivatives**") except for the Purpose;

   (b) Disclose**Not disclose** or allow the disclosure to any person (defined below) of all or any portion of the Materials or Derivatives (collectively, "**Confidential Information**");

   (c) Disclose**Not disclose** or allow the disclosure to any person of any correlation existing between the Confidential Information and public information;  and

   (d) Disclose**Not disclose** or allow the disclosure to any person the fact that the

Confidential Information has been made available to Recipient or that discussions or negotiations are taking place concerning the Properties, the Transaction or the Purpose or any of the terms, conditions, or other facts with respect thereto, including the status thereof; and

(e) Treat, and cause to be to treated, all Confidential Information as strictly confidential.

As used herein, the term "**person**" shall be broadly interpreted to include the media, any individual, and any corporation, partnership, group, governmental unit or agency, or any other entity.

As used herein, the term "**Representatives**" shall mean, with respect to a Party, its affiliates and its and its affiliate's officers, directors, employees, agents and advisors (including its and its affiliates' financial advisors, attorneys, accountants and other consultants), and, to the extent permitted by Section 7, any actual or potential financing sources (debt, equity or otherwise) or co-bidders.

2.      Notwithstanding the provisions of Section 1, Recipient may make the disclosures described therein without Discloser's prior written consent to Recipient's Representatives who (i) have a strict need to know for the Purpose, and (ii) have agreed in writing prior to being given access to the Confidential Information to be bound by the terms of this Agreement to the same extent as if they were parties hereto.  Recipient agrees to and shall be liable for any breach of this Agreement by any of its Representatives.

3.      The obligations in Section 1 shall not apply to:

(a) Information which at the time of disclosure hereunder was previously developed by Recipient or its Representatives and already in their possession;

(b) Information which at the time of disclosure hereunder was in the public domain or which thereafter becomes part of the public domain through no action or failure to act on the part of Recipient or its Representatives; and

(c) Information which at the time of disclosure hereunder was or is thereafter lawfully acquired by Recipient or its Representatives from a source other than Discloser or its Representatives, provided that Recipient and its Representatives reasonably believe, after diligent inquiry, that such source was not under an obligation of confidence with respect thereto and did not acquire such information directly or indirectly from Discloser.

4.      Discloser retains all rights, titles, and interests in and to the Materials. At any time when requested in writing by Discloser, Recipient shall promptly, but in no more than five (5) business days, return to Discloser all Materials and destroy all Derivatives without retaining any copies thereof.  Notwithstanding the above, Recipient may retain such electronic copies of the Confidential Information as are made by Recipient in the normal course of its routine electronic file back-up procedures provided that Recipient shall not access or use such Confidential Information and such files shall be destroyed in accordance with such procedures, but in no event later than six (6) months after

Recipient's receipt of the written request described above. Upon Discloser's request, Recipient shall promptly provide written certification to Discloser that it has complied with the terms of this Section 4. Notwithstanding the return of the Materials or the destruction of the Derivatives, Recipient shall continue to be bound by its confidentiality and other obligations under this Agreement.

5. If Recipient or its Representatives are requested or required by oral question, written interrogatories, request for information or documents, subpoena, or similar process to disclose Confidential Information, Recipient shall promptly notify Discloser of such request, requirement, or proceeding in order to afford Discloser an opportunity to seek a protective order or other assurance that the Confidential Information will not be disclosed or disseminated by the recipient(s) thereof. Upon Discloser's request, Recipient shall cooperate with Discloser to seek and obtain such a protective order or other assurance. If Discloser is unable to obtain or does not seek such a protective order or other assurance, then Recipient may disclose only such portions of the Confidential Information that Recipient or its Representatives are advised by their counsel they are legally compelled to disclose under pain or liability for contempt, censure, or penalty.

6. This Agreement shall not be construed or implied to, and nothing herein shall, obligate Discloser to (i) furnish any specific information or type of information to Recipient or its Representatives or (ii) enter into any type of further agreement with Recipient. Discloser may reject any and all bids for the Properties at any time, may change the transaction procedures and may enter into any agreement with any other person, in each case at any time and without notice to the Recipient or any of its Representatives. There shall be no binding agreement between Discloser and Recipient for a Transaction unless and until a final definitive agreement for the Transaction has been fully signed and delivered by both Discloser and Recipient.

7. Recipient represents that, other than as disclosed to Discloser in writing prior to the execution of this Agreement, neither Recipient nor any of its Representatives has entered into, directly or indirectly, any agreement or understanding with any person (other than any of Recipient's Representatives) with respect to a possible Transaction or that could otherwise affect such person's decisions or actions with respect to a possible transaction involving the Discloser.

8. Without the prior written consent of the Discloser, neither Recipient nor any of its Representatives who are aware of the possible Transaction will initiate or cause to be initiated (other than through the specific contacts designated in writing by Discloser) any: (a) communication concerning the Confidential Information, the Transaction or the Discloser and its affiliates; (b) requests for meetings with management in connection with a possible Transaction; or (c) communication relating to the business of Discloser or any of its affiliates or a possible Transaction, in each case with any officer, director or employee of Discloser or any of its affiliates. Additionally, Recipient will not, directly or indirectly, **(i)** communicate with any contractor, customer, **lender or creditor** of Discloser or any of its affiliates regarding the Discloser or its affiliates, including, without limitation, in connection with the possible Transaction (or Recipient's evaluation thereof),~~. Nothing in this Agreement is intended to prohibit Recipient from communicating with any lender or creditor of Discloser~~ **or (ii) acquire (whether through assignment, purchase, participation, tender, exchange**

**or otherwise) any interest in any claims against, or any debt of, equity interests in or other securities of, the Discloser or any of its affiliates, in each case without the prior written consent of the Discloser.¶**

**¶**

**Notwithstanding the foregoing, the Recipient shall be permitted to communicate with Wells Fargo Bank, National Association, solely in its capacity as administrative agent (the "RBL Facility Agent") under that certain Second Amended and Restated Credit Agreement, dated as of December 30, 2009 (as amended and as may be amended hereafter, the "RBL Facility"), among the Discloser, as borrower, each of the lenders from time to time party thereto, and the RBL Facility Agent, as administrative agent,** regarding the Discloser or any of its affiliates, including without limitation, in connection with the possible Transaction (or Recipient's evaluation thereof)**; provided, however, prior to any such communication between the RBL Facility Agent and Recipient, the RBL Facility Agent shall first agree in a written undertaking delivered to Recipient and Discloser not to disclose (y) any aspect of such communications, including that communications are ongoing between W&T and the RBL Facility Agent, with the other lenders party to the RBL Facility without first obtaining the express written consent of Discloser, and (z) any information about any other bids, bidders, transactions, or potential transactions regarding the Properties**.

9.    RECIPIENT ACKNOWLEDGES (i) THE INHERENT RISK OF ERROR IN THE ACQUISITION, PROCESSING, AND INTERPRETATION OF GEOLOGICAL, GEOPHYSICAL AND RESERVE DATA AND INTERPRETATIVE DATA OF ALL KINDS, AND (ii) THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES   MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, STATUTORY, AT COMMON LAW OR OTHERWISE, AS TO THE ACCURACY, QUALITY OR COMPLETENESS OF THE CONFIDENTIAL INFORMATION.  RECIPIENT AGREES THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES SHALL BE LIABLE TO RECIPIENT OR ANY OTHER PERSONS IN CONTRACT, TORT, OR OTHERWISE RESULTING FROM USE OF OR RELIANCE UPON ANY CONFIDENTIAL INFORMATION BY RECIPIENT OR ITS REPRESENTATIVES.  RECIPIENT ALSO AGREES THAT ONLY THOSE SPECIFIC REPRESENTATIONS AND WARRANTIES WHICH MAY BE MADE TO RECIPIENT OR ITS REPRESENTATIVES BY DISCLOSER IN A DEFINITIVE AGREEMENT COVERING THE TRANSACTION CONTEMPLATED HEREBY (WHEN AND IF THE SAME IS MADE) SHALL HAVE LEGAL EFFECT.

10.    No failure or delay by Discloser in exercising any right, power, privilege, or remedy hereunder shall operate or be construed as a waiver thereof or preclude the exercise of any other or future right, power, privilege, or remedy. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the party so waiving. No waiver by a Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.

11.    Neither Party may assign this Agreement or any of their rights or obligations hereunder without the prior written consent of the other Party and any such attempted assignment

without such prior written consent shall be null and void.  Any consents requested under this Section shall not be unreasonably withheld, conditioned or delayed.

12.     This Agreement shall terminate ~~one~~eighteen (~~1~~18) ~~year~~months from the date hereof.

13.     This Agreement shall be binding upon each Party and their respective successors and permitted assigns.

14.     Except as otherwise provided herein, all notices that are required or may be given pursuant to this Agreement shall be sufficient in all respects if given in writing and delivered personally, by facsimile, or by recognized courier service, as follows:

If to Recipient:

> W&T Offshore Inc.
> 9 Greenway Plaza Suite 300
> Ho~~o~~uston, Texas 77046¶
> ~~<INSERT ADDRESS>~~
> Attn: William Williford, EVP GOM Operations
> Telephone:
> Email: wwilliford@wtoffshore.com

If to Discloser:

> Arena Energy, LP
> 2103 Research Forest Drive, Suite 400
> The Woodlands, Texas 77380
> Attn: ~~SVP – Business Development~~                           ¶
> ~~Telephone: 281-681-9500¶~~
> ~~Email: caps@arenaenergy.com¶~~

¶
~~With a copy to:¶~~
¶

> ~~Arena Energy, LP¶~~
> ~~2103 Research Forest Drive, Suite 400¶~~
> ~~The Woodlands, Texas 77380¶~~Attn: SVP  **Ed Menger, Interim** General Counsel

> Telephone: 281-681-9500
> Email: ~~sweatherholt@arenaenergy.com~~**EMenger@arenaenergy.com**

15.     Without prejudice to any rights or remedies that Discloser or any of its affiliates may have, Recipient acknowledges and agrees that neither damages nor an account of profits would be an adequate remedy for any breach by Recipient or its Representatives of the provisions of this Agreement and that, accordingly, Discloser shall be entitled to seek equitable relief including, but not limited to, injunctive relief and specific performance, without proof of actual damages, for any breach or anticipated or threatened breach of this Agreement. Recipient shall reimburse Discloser for any costs

incurred including, but not limited to, attorneys' fees, costs of court, witness fees and expenses, claims, demands or liabilities arising directly or indirectly out of any such breach or anticipated or threatened breach.

16. The invalidity of any one or more provisions of this Agreement shall not affect the validity of this Agreement as a whole, and in case of any such invalidity, this Agreement shall be construed as if the invalid provision had not been included herein.

17. This Agreement may be executed in multiple counterparts, each of which taken together shall constitute one Agreement. This Agreement shall be effective when it has been executed and delivered by both Parties. A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

18. No modifications or amendments to this Agreement shall be binding on the Parties unless and until such modifications or amendments are executed in writing by an authorized representative of each Party.

19. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to principles of conflict of law. Venue for any dispute between the Parties shall exclusively rest with any state or federal court located in Harris County, Texas.

20. To the extent that any Confidential Information includes materials or other information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege or doctrine concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention, and mutual understanding that the sharing of such material or other information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or information or its continued protection under the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine as a result of disclosing any Confidential Information (including Confidential Information related to pending or threatened litigation) to the Recipient or any of its Representatives.

21. Recipient hereby further acknowledges and agrees that Discloser would be irreparably injured by any breach of, or failure to comply with, this Agreement by Recipient or its Representatives and that money damages are an inadequate remedy for an actual or threatened breach of this Agreement or any failure to comply with this Agreement because of the difficulty of ascertaining the amount of damage that will be suffered by Discloser in the event of any such breach or failure to comply. Therefore, Recipient agrees to the granting of specific performance of this Agreement and injunctive or other equitable relief in favor of Discloser as a remedy for any such breach or failure to comply, without proof of actual damages, and Recipient further waives any requirement for the securing or posting of any bond in connection with any such remedy. Such remedy shall not be deemed to be the exclusive remedy for Recipient's breach of, or failure to comply with, this Agreement, but shall be in addition to all other remedies available at law or in equity. In the event of any breach of, or failure to comply with, this Agreement by Recipient or its Representatives, Recipient agrees to reimburse Discloser promptly upon demand for all out of pocket costs

and expenses reasonably incurred by it and its Representatives in the enforcement of its rights hereunder (including, without limitation, reasonable fees and disbursements of counsel). Recipient hereby agrees to indemnify and hold harmless Discloser and its Representatives from and against any damage, claim, loss, obligation, liability, penalty, cost or expense (including reasonable fees and disbursements of counsel and the cost of enforcing this indemnity) arising out of or resulting from (i) any disclosure or use of Confidential Information contrary to the terms of this Agreement by Recipient or its Representatives, or (ii) any other breach of, or failure to comply with, the terms of this agreement by Recipient or its Representatives

*       *       *       *

IN WITNESS WHEREOF, the duly authorized representatives of the Parties have caused this Agreement to be executed on the date first written above. ¶

¶

**RECIPIENT:** ———————————— **DISCLOSER:**¶

¶

W&T Offshore Inc.    ARENA ENERGY, LP¶

———————————————————— by ARENA ENERGY GP, LLC¶

———————————————————— its Sole General Partner¶

¶

By: ——————————————— By: ——————————————————¶

¶

Name: ————————————— Name: Scott C. Weatherholt¶

Title: —————————————— Title: Senior Vice President General Counsel ¶

**RECIPIENT:**                        **DISCLOSER:**

**W&T OFFSHORE INC.**             **ARENA ENERGY, LP**

                                 **By:**                                        A

                                    **its general partner**

                                 **By:**                                        W

                                    **its sole member**

**By:**                           **By:**

**Name:**                            **its general partner**

**Title:**                        **By:**

                                    **its sole member**


                                 **By:**

                                 **Name: John Edward Menger**

                                 **Title: Interim General Counsel**

**EXHIBIT A**

TO THAT CERTAIN CONFIDENTIALITY AGREEMENT DATED _____, 2020
BY AND BETWEEN
_____, AS RECIPIENT,
AND
ARENA ENERGY, LP, AS DISCLOSER

DESCRIPTION OF PROPERTIES



Document comparison by Workshare Compare on Sunday, August 2, 2020
4:10:57 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS.KIRKLAND.COM/LEGAL/70282937/1 |
| Description | #70282937v1<LEGAL> - Arena - W&T Confidentiality Agreement (W&T 8-2-20) |
| Document 2 ID | C:\NRPortbl\LEGAL\JFURLOW\70282937_4.docx |
| Description | C:\NRPortbl\LEGAL\JFURLOW\70282937_4.docx |
| Rendering set | Color |

| Legend: | |
|---|---|
| **Insertion** | |
| Deletion | |
| *Moved from* | |
| *Moved to* | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 30 |
| Deletions | 36 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 66 |