# Exhibit 22
## August 23, 2020 letter to W&T Offshore re Improper access to confidential information

# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TEXAS 77002-5096
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

_____

| SUITE 1400 | SUITE 3800 | 32ND FLOOR |
| 1900 AVENUE OF THE STARS | 1201 THIRD AVENUE | 1301 AVENUE OF THE AMERICAS |
| LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 | NEW YORK, NEW YORK 10019-6023 |
| (310) 789-3100 | (206) 516-3880 | (212) 336-8330 |

GEOFFREY L. HARRISON
DIRECT DIAL (713) 653-7807

E-MAIL GHARRISON@SUSMANGODFREY.COM

August 23, 2020

Via email – peisenberg@lockelord.com
W&T Offshore, Inc.
c/o Philip Eisenberg
Locke Lord, LLP
600 Travis, Suite 2800
Houston, TX 77002

Re:   W&T Offshore, Inc.'s Improper Access to Arena Energy, LP's Confidential Information

Dear Phil:

Arena Energy, LP and 31 Group, LLC are parties to a May 22, 2020 Confidentiality Agreement. Arena and 31 Group entered into this Confidentiality Agreement before Arena provided 31 Group access to Arena's confidential data room as part of a potential sales process. I represent Arena.

Arena has learned that 31 Group improperly provided W&T with access to Arena's confidential information that 31 Group obtained by signing the Confidentiality Agreement, and did so without requiring W&T to sign a joinder to that Confidentiality Agreement. 31 Group violated the Confidentiality Agreement, and did so after W&T itself refused to sign a confidentiality agreement with Arena substantially identical to the agreements signed by plan sponsor San Juan Offshore, LLC and the 19 other potential bidders who legitimately gained access to Arena's confidential information. In addition to not signing such a confidentiality agreement, W&T admitted in a July 31 email that it also did not sign a joinder to 31 Group's Confidentiality Agreement. W&T stated in a May 28 email that it "will not sign any NDA" that restricts its "ability to engage with Arena's creditors"—a standard restriction to which San Juan and the 19 other potential bidders agreed. Arena chose to protect the integrity and fairness of the process rather than grant W&T a special exception and confer on W&T rights not granted to the other potential bidders.

001

W&T Offshore, Inc.
c/o Philip Eisenberg
August 23, 2020
Page 2

W&T appears knowingly to have encouraged and participated in 31 Group's breach and to have compromised and interfered with Arena's rights under the Confidentiality Agreement. It appears that 31 Group also knowingly may have violated Confidentiality Agreement § 7 by entering directly or indirectly into an agreement or understanding with W&T. W&T is one of Arena's direct competitors, and W&T knows it improperly obtained access to Arena's confidential information.

W&T has had multiple opportunities—and still has an opportunity—legitimately to access Arena's confidential information (and to submit an unsolicited proposed bid) by signing a confidentiality agreement that is substantially identical to the one that San Juan and the 19 other potential bidders signed.

Arena requests that, by 12 noon ct on Monday August 24, W&T certify in writing to Arena that:

1. W&T has sent to Arena or destroyed its copies of all of Arena's confidential information that W&T accessed or obtained from or through 31 Group. The information for W&T to send to Arena (and destroy all its copies of) includes but is not limited to geological and geophysical information, well logs, engineering, drilling, and wellbore information and reports, cashflow forecasts, reserve studies, maps, field studies, financial and tax information and analyses, leases, licenses, concessions, permits, and contracts of all kinds, production, price, and reserves information, and agreements for production transportation, treating, processing, and marketing regarding the assets of Arena or any of its subsidiaries or affiliates.

2. W&T has destroyed all copies of any notes, copies, summaries, analyses, studies, forecasts, or other materials, information, or conclusions derived from the review, inspection, examination, or evaluation of any kind of some or all of the Arena information that W&T received from 31 Group. W&T also should provide Arena with an itemized list sufficient to identify all such items.

3. W&T, W&T's affiliates, and each of W&T's and W&T's affiliates' representatives, officers, directors, managers, employees, existing or prospective financing sources, agents and advisors (including W&T's and W&T's affiliates' financial advisors, attorneys, accountants and other consultants) immediately upon receipt of this letter ceased any and all use of Arena's confidential information.

4. W&T has placed a litigation hold on all documents and communications related to the Arena sales process, W&T's communications with Arena about the sales process, W&T's communications with 31 Group related to

W&T Offshore, Inc.
c/o Philip Eisenberg
August 23, 2020
Page 3

> 31 Group providing—or considering providing or attempting to provide—W&T with access to or copies of or information about Arena's confidential information, and any agreement or understanding with 31 Group or any person with respect to a possible transaction relating to Arena's assets as discussed in Confidentiality Agreement § 7 or otherwise. W&T's litigation hold should cover all documents and communications related to Arena's confidential information, including but not limited to documents and communications related to 31 Group's and W&T's access, use, distribution, discussion, and reference to Arena's confidential information.

While Arena must protect its confidential information from improper disclosure, that does not mean that Arena, as a fiduciary for all of its stakeholders, is unable to consider an unsolicited restructuring proposal from W&T or any other party. As you know, § 9.02 of the August 19, 2020 Restructuring Support and Plan Sponsor Agreement provides the Transaction Committee the right to "consider, respond to, and facilitate unsolicited Alternative Restructuring Proposals" but not to "solicit" such proposals. And § 13.03(c) permits Arena to terminate the Restructuring Support and Plan Sponsor Agreement if it determines "that proceeding with any of the Restructuring Transactions would be inconsistent with the exercise of its fiduciary duties or applicable Law or . . . in the exercise of its fiduciary duties, to pursue an Alternative Restructuring Proposal."

To be clear, Arena and the Transaction Committee are not soliciting a proposal from W&T. But Arena has been and remains willing to consider unsolicited proposals from W&T and others. With respect to your Friday August 21 at 11.04p ct email listing items W&T wants to review, Arena has been and remains willing to provide W&T with information that W&T reasonably needs to prepare an unsolicited proposal provided, again, that W&T sign the attached confidentiality agreement that is substantially identical to the one signed by San Juan and the 19 other potential bidders to which Arena granted access to the data room. Please let me know within two business days (by 5p ct on Tuesday August 25) whether W&T will sign this confidentiality agreement.

Arena has protected and intends to continue to protect the integrity of the restructuring process. Arena will not provide W&T with its confidential information unless and until W&T (like plan sponsor San Juan and the 19 other potential bidders) signs the substantially identical confidentiality agreement.

Arena's willingness to consider an unsolicited alternative restructuring proposal from W&T as allowed by and in accordance with § 9.02 does not mean that Arena is soliciting an alternative restructuring proposal from W&T and/or otherwise waiving any rights as against W&T and 31 Group for their conduct and complicity in violating Arena's contractual rights and their misuse of and improper access to

W&T Offshore, Inc.
c/o Philip Eisenberg
August 23, 2020
Page 4

Arena's confidential information. Whether W&T does or does not submit an unsolicited proposal, Arena reserves all (and does not waive any) contractual, legal, and other rights against W&T and 31 Group, including but not limited to the right to seek money damages and all other available legal and equitable remedies, including reimbursement of attorneys' fees, in connection with the matters discussed in this letter.

Sincerely,

Geoffrey L. Harrison
*Counsel for Arena Energy, LP*
Attachment
cc:    Rick Hess, Sy Polky
       Brian E. Schartz, Gregory F. Pesce

004

# CONFIDENTIALITY AGREEMENT

THIS CONFIDENTIALITY AGREEMENT ("**Agreement**") is entered into effective as of August 23, 2020 by and among Arena Energy, LP, a Delaware limited partnership with offices located at 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380 ("**Arena Energy**"), Sagamore Hill Holdings, LP, a Delaware limited partnership with offices located at 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380 ("**Sagamore**" and together with Arena and its subsidiaries, collectively, the "**Discloser**"), and W&T Offshore Inc., a legal entity formed under the laws of Texas with offices located at 9 Greenway Plaza Suite 300 Houston, Texas 77046 ("**Recipient**"). Discloser and Recipient are sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**".

WHEREAS, the Discloser, along with certain other debtor parties (collectively, the "**Debtors**") have previously entered into a restructuring support agreement (the "**RSA**") on August 19, 2020;

WHEREAS, the RSA provides for a comprehensive restructuring of the Debtors, including, among other transactions, a sale of substantially all of the assets of the Discloser to San Juan Offshore, LLC, pursuant to an asset purchase agreement, dated as of August 19, 2020 (the "**APA**");

WHEREAS, the RSA prohibits the Debtors from soliciting competing proposals to the sale transaction contemplated by the APA, however, the RSA also provides the Debtors with a "fiduciary out" that permits the Transaction Committee (as defined in the RSA)to evaluate unsolicited proposals for alternative transactions and, if appropriate, terminate the RSA to pursue any such unsolicited alternative transaction; and

WHEREAS, the Transaction Committee previously received an Unsolicited Alternative Restructuring Proposal (as defined in the RSA) from Recipient pursuant to which Recipient would acquire substantially all of the Assets from the Discloser (the "**Unsolicited Alternative Transaction**");

WHEREAS, Recipient has now requested that it be permitted to examine certain additional information in the possession of Discloser regarding the oil and gas properties, interests and other assets and liabilities of the Discloser (collectively, the "**Assets**") for the sole purpose of evaluating whether to continue to pursue or supplement its previously-submitted Unsolicited Alternative Restructuring Proposal and, if applicable, negotiating and consummating the Unsolicited Alternative Transaction (the "**Purpose**");

WHEREAS, prior to the date hereof and at the request of the Discloser, the Recipient either returned to the Discloser or otherwise destroyed all Confidential Information in its or its Representatives' possession that was provided to them by 31 Group, LLC ("**31 Group**") or any of its Representatives;

WHEREAS, in order to enable Recipient to evaluate the Assets solely for the Purpose, Discloser has agreed to furnish Recipient with certain confidential and proprietary data and information regarding the Assets, the Discloser and its affiliates, which may include, but is not limited to, geological and geophysical information; well logs; engineering, drilling, and wellbore information and reports; cashflow forecasts; reserve studies; maps; field studies, financial and tax

information and analyses; leases, licenses, concessions, permits, and contracts of all kinds; production, price, and reserves information; and agreements for production transportation, treating, processing, and marketing regarding the Assets (collectively, "**Materials**").

NOW, THEREFORE, in consideration of the disclosure and divulgence of the Materials to Recipient and of the covenants herein contained, Recipient and Discloser hereby agree as follows:

1. Except as provided in Sections 2 , 3 and 8 below, Recipient and its Representatives (defined below) shall, without the prior written consent of Discloser:

    (a) Not use or allow the use of the Materials or any notes, copies, summaries, analyses, studies, forecasts, or other materials, information, or conclusions derived from the inspection, examination, or evaluation of the Materials, whether prepared by the Discloser or the Recipient or any of their respective Representatives or others which contain or reflect or are generated from, any of the Materials (collectively, "**Derivatives**") except for the Purpose;

    (b) Not disclose or allow the disclosure to any person (defined below) of all or any portion of the Materials or the Derivatives (collectively, "**Confidential Information**");

    (c) Not disclose or allow the disclosure to any person of any correlation existing between the Confidential Information and public information; and

    (d) Not disclose or allow the disclosure to any person the fact that the Confidential Information has been made available to Recipient or that discussions or negotiations (if applicable) are taking place concerning the Assets, an Unsolicited Alternative Transaction or the Purpose or any of the terms, conditions, or other facts with respect thereto, including the status thereof; and

    (e) Treat, and cause to be to treated, all Confidential Information as strictly confidential.

    As used herein, the term "**person**" shall be broadly interpreted to include the media, any individual, and any corporation, partnership, group, governmental unit or agency, or any other entity.

    As used herein, the term "**Representatives**" shall mean, with respect to a Party, its affiliates and its and its affiliate's officers, directors, employees, agents and advisors (including its and its affiliates' financial advisors, attorneys, accountants and other consultants), and, to the extent permitted by Section 7, any actual or potential financing sources (debt, equity or otherwise) or co-bidders; provided, however, notwithstanding the foregoing, neither 31 Group nor any of its Representatives shall be Representatives of Recipient hereunder without the prior written consent of Discloser.

2. Notwithstanding the provisions of Section 1, Recipient may make the disclosures described therein without Discloser's prior written consent to Recipient's Representatives who (i)

have a strict need to know for the Purpose, and (ii) have agreed in writing prior to being given access to the Confidential Information to be bound by the terms of this Agreement to the same extent as if they were parties hereto.  Recipient agrees to and shall be liable for any breach of this Agreement by any of its Representatives.

3. The obligations in <u>Section 1</u> shall not apply to:

   (a) Information which at the time of disclosure hereunder was previously developed by Recipient or its Representatives and already in their possession but expressly excluding any Confidential Information provided by the 31 Group or any of its Representatives;

   (b) Information which at the time of disclosure hereunder was in the public domain or which thereafter becomes part of the public domain through no action or failure to act on the part of Recipient or its Representatives or the 31 Group or its Representatives;

   (c) Information which at the time of disclosure hereunder was or is thereafter lawfully acquired by Recipient or any of its Representatives from a source other than the 31 Group or its Representatives or the Discloser or any of its Representatives, provided that Recipient and its Representatives reasonably believe, after diligent inquiry, that such source was not under an obligation of confidence with respect thereto and did not acquire such information directly or indirectly from Discloser or any of its Representatives.

4. Discloser retains all rights, titles, and interests in and to the Materials. At any time when requested in writing by Discloser, Recipient shall promptly, but in no more than five (5) business days, return to Discloser all Materials and destroy all Derivatives without retaining any copies thereof.  Notwithstanding the above, Recipient may retain such electronic copies of the Confidential Information as are made by Recipient in the normal course of its routine electronic file back-up procedures provided that Recipient shall not access or use such Confidential Information and such files shall be destroyed in accordance with such procedures, but in no event later than six (6) months after Recipient's receipt of the written request described above. Upon Discloser's request, Recipient shall promptly provide written certification to Discloser that it has complied with the terms of this <u>Section 4</u>. Notwithstanding the return of the Materials or the destruction of the Derivatives, Recipient shall continue to be bound by its confidentiality and other obligations under this Agreement.

5. If Recipient or its Representatives are requested or required by oral question, written interrogatories, request for information or documents, subpoena, or similar process to disclose Confidential Information, Recipient shall promptly notify Discloser of such request, requirement, or proceeding in order to afford Discloser an opportunity to seek a protective order or other assurance that the Confidential Information will not be disclosed or disseminated by the recipient(s) thereof.  Upon Discloser's request, Recipient shall cooperate with Discloser to seek and obtain such a protective order or other assurance. If Discloser is unable to obtain or does not seek such a protective order or other assurance, then Recipient may disclose only such portions of the Confidential Information that Recipient or its

       Representatives are advised by their counsel they are legally compelled to disclose under pain or liability for contempt, censure, or penalty.

6. This Agreement shall not be construed or implied to, and nothing herein shall, obligate Discloser to (i) furnish any specific information or type of information to Recipient or its Representatives, (ii) enter into any type of further agreement with Recipient, (iii) further engage with or otherwise assist Recipient with respect to further evaluating the Unsolicited Alternative Transaction or (iv) take any action that may, in the opinion of Discloser (as determined in its sole discretion), constitutes or may constitute a breach of the RSA or the APA. Discloser may reject Recipient's Unsolicited Alternative Restructuring Proposal and any future Unsolicited Alternative Restructuring Proposals from Recipient at any time and may enter into any agreement with any other person, in each case at any time and without notice to the Recipient or any of its Representatives. There shall be no binding agreement between Discloser and Recipient for an Unsolicited Alternative Transaction unless and until a final definitive agreement for the Unsolicited Alternative Transaction has been fully signed and delivered by both Discloser and Recipient.

7. Recipient represents that neither Recipient nor any of its Representatives has entered into, directly or indirectly, any agreement or understanding with any person (other than any of Recipient's Representatives) with respect to a possible Unsolicited Alternative Transaction or that could otherwise affect such person's decisions or actions with respect to a possible Unsolicited Alternative Transaction involving the Discloser. Recipient represents that it has either returned to the Discloser or otherwise destroyed all Confidential Information in its or its Representatives' possession that was provided to them by 31 Group or any of its Representatives prior to the date hereof.

8. Without the prior written consent of the Discloser, neither Recipient nor any of its Representatives who are aware of the Unsolicited Alternative Restructuring Proposal or the possible Unsolicited Alternative Transaction will initiate or cause to be initiated (other than through the specific contacts designated in writing by Discloser) any: (a) communication concerning the Confidential Information, the Unsolicited Alternative Transaction or the Discloser and its affiliates; (b) requests for meetings with management in connection with a possible Unsolicited Alternative Transaction; or (c) communication relating to the business of Discloser or any of its affiliates or a possible Unsolicited Alternative Transaction, in each case with any officer, director or employee of Discloser or any of its affiliates. Additionally, Recipient will not, directly or indirectly, (i) communicate with any contractor, customer, lender or creditor of Discloser or any of its affiliates regarding the Discloser or its affiliates, including, without limitation, in connection with the possible Unsolicited Alternative Transaction (or Recipient's evaluation or negotiation thereof), or (ii) acquire (whether through assignment, purchase, participation, tender, exchange or otherwise) any interest in any claims against, or any debt of, equity interests in or other securities of, the Discloser or any of its affiliates, in each case without the prior written consent of the Discloser.

9. RECIPIENT ACKNOWLEDGES (i) THE INHERENT RISK OF ERROR IN THE ACQUISITION, PROCESSING, AND INTERPRETATION OF GEOLOGICAL, GEOPHYSICAL AND RESERVE DATA AND INTERPRETATIVE DATA OF ALL KINDS, AND (ii) THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, STATUTORY, AT COMMON LAW OR OTHERWISE, AS TO

THE ACCURACY, QUALITY OR COMPLETENESS OF THE CONFIDENTIAL INFORMATION. RECIPIENT AGREES THAT NEITHER DISCLOSER NOR ANY OF ITS REPRESENTATIVES SHALL BE LIABLE TO RECIPIENT OR ANY OTHER PERSONS IN CONTRACT, TORT, OR OTHERWISE RESULTING FROM USE OF OR RELIANCE UPON ANY CONFIDENTIAL INFORMATION BY RECIPIENT OR ITS REPRESENTATIVES. RECIPIENT ALSO AGREES THAT ONLY THOSE SPECIFIC REPRESENTATIONS AND WARRANTIES WHICH MAY BE MADE TO RECIPIENT OR ITS REPRESENTATIVES BY DISCLOSER IN A DEFINITIVE AGREEMENT COVERING AN UNSOLICITED ALTERNATIVE TRANSACTION (WHEN AND IF THE SAME IS MADE) SHALL HAVE LEGAL EFFECT.

10. No failure or delay by Discloser in exercising any right, power, privilege, or remedy hereunder shall operate or be construed as a waiver thereof or preclude the exercise of any other or future right, power, privilege, or remedy. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the Party so waiving. No waiver by a Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. Nothing in this Agreement nor the fact the Parties' have entered into this Agreement shall be deemed to constitute a waiver of any rights or claims that Discloser or any of its Representative have or may have against Recipient, the 31 Group or any of their respective Representatives, and the Discloser expressly reserves any and all such rights.

11. Neither Party may assign this Agreement or any of their rights or obligations hereunder without the prior written consent of the other Party and any such attempted assignment without such prior written consent shall be null and void. Any consents requested under this Section shall not be unreasonably withheld, conditioned or delayed.

12. This Agreement shall terminate eighteen (18) months from the date hereof.

13. This Agreement shall be binding upon each Party and their respective successors and permitted assigns.

14. Except as otherwise provided herein, all notices that are required or may be given pursuant to this Agreement shall be sufficient in all respects if given in writing and delivered personally, by facsimile, or by recognized courier service, as follows:

If to Recipient:

> W&T Offshore Inc.
> 9 Greenway Plaza Suite 300
> Houston, Texas 77046
> Attn: William Williford, EVP GOM Operations
> Telephone: 713-624-7269
> Email: wwilliford@wtoffshore.com

If to Discloser:

>Arena Energy, LP
>2103 Research Forest Drive, Suite 400
>The Woodlands, Texas 77380
>Attn: Ed Menger, Interim General Counsel
>Telephone: 281-681-9500
>Email: EMenger@arenaenergy.com

15. Without prejudice to any rights or remedies that Discloser or any of its affiliates may have, Recipient acknowledges and agrees that neither damages nor an account of profits would be an adequate remedy for any breach by Recipient or its Representatives of the provisions of this Agreement and that, accordingly, Discloser shall be entitled to seek equitable relief including, but not limited to, injunctive relief and specific performance, without proof of actual damages, for any breach or anticipated or threatened breach of this Agreement. Recipient shall reimburse Discloser for any costs incurred including, but not limited to, attorneys' fees, costs of court, witness fees and expenses, claims, demands or liabilities arising directly or indirectly out of any such breach or anticipated or threatened breach.

16. The invalidity of any one or more provisions of this Agreement shall not affect the validity of this Agreement as a whole, and in case of any such invalidity, this Agreement shall be construed as if the invalid provision had not been included herein.

17. This Agreement may be executed in multiple counterparts, each of which taken together shall constitute one Agreement. This Agreement shall be effective when it has been executed and delivered by both Parties. A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

18. No modifications or amendments to this Agreement shall be binding on the Parties unless and until such modifications or amendments are executed in writing by an authorized representative of each Party.

19. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to principles of conflict of law. Venue for any dispute between the Parties shall exclusively rest with any state or federal court located in Harris County, Texas.

20. To the extent that any Confidential Information includes materials or other information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege or doctrine concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention, and mutual understanding that the sharing of such material or other information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or information or its continued protection under the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine as a result of disclosing any Confidential Information (including Confidential Information related to pending or threatened litigation) to the Recipient or any of its Representatives.

21. Recipient hereby further acknowledges and agrees that Discloser would be irreparably injured by any breach of, or failure to comply with, this Agreement by Recipient or its Representatives and that money damages are an inadequate remedy for an actual or threatened breach of this Agreement or any failure to comply with this Agreement because of the difficulty of ascertaining the amount of damage that will be suffered by Discloser in the event of any such breach or failure to comply. Therefore, Recipient agrees to the granting of specific performance of this Agreement and injunctive or other equitable relief in favor of Discloser as a remedy for any such breach or failure to comply, without proof of actual damages, and Recipient further waives any requirement for the securing or posting of any bond in connection with any such remedy. Such remedy shall not be deemed to be the exclusive remedy for Recipient's breach of, or failure to comply with, this Agreement, but shall be in addition to all other remedies available at law or in equity. In the event of any breach of, or failure to comply with, this Agreement by Recipient or its Representatives, Recipient agrees to reimburse Discloser promptly upon demand for all out of pocket costs and expenses reasonably incurred by it and its Representatives in the enforcement of its rights hereunder (including, without limitation, reasonable fees and disbursements of counsel). Recipient hereby agrees to indemnify and hold harmless Discloser and its Representatives from and against any damage, claim, loss, obligation, liability, penalty, cost or expense (including reasonable fees and disbursements of counsel and the cost of enforcing this indemnity) arising out of or resulting from (i) any disclosure or use of Confidential Information contrary to the terms of this Agreement by Recipient or its Representatives, or (ii) any other breach of, or failure to comply with, the terms of this agreement by Recipient or its Representatives

\* \* \* \*

IN WITNESS WHEREOF, the duly authorized representatives of the Parties have caused this Agreement to be executed on the date first written above.

**RECIPIENT**:

W&T OFFSHORE INC.


By:_____
Name:_____
Title:_____

**DISCLOSER**:

ARENA ENERGY, LP
By: Arena Energy 2020 II GP, LLC,
    its general partner
By: W.R. Day Energy Holdings, LP,
    its sole member
By: Arena Energy 2020 GP, LLC,
    its general partner
By: Arena Energy GP, LLC,
    its sole member


By:_____
Name: John Edward Menger
Title: Authorized Signatory


SAGAMORE HILL HOLDINGS, LP
By: Arena Energy GP, LLC,
    its general partner member


By:_____
Name: John Edward Menger
Title: Authorized Signatory

[SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT]